## Stitzell *versus* Reynolds and Wife.

1. In slander the words laid and proved were, the plaintiff "had stolen corn out of Gribble's field." The defendant's point was "that if the jury believe the defendant spoke, and the bystanders understood him as referring to standing corn, the plaintiff could not recover." *Held*, that the point should have been affirmed.

2. Calling one a thief for stealing a tree or other thing adhering to the freehold is not actionable.

3. Charging one with wilfully taking fruit, &c., which is made by Act of Assembly a misdemeanor, is not actionable.

4. To constitute slander the words spoken must impute an offence both indictable and infamous.

5. Conduct and words of the defendant after suit brought should not be submitted to the jury as an element in assessing damages.

6. Such evidence is proper in determining the question of malice with which the words charged had been spoken.

November 15th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Fayette county*: No. 47, to October and November Term 1870.

This was an action on the case for slander, brought August 23d 1866, by Patrick Reynolds and Elizabeth his wife against Frederick Stitzell. The words laid in one count were that "Mrs. Reynolds had stolen corn out of Gribble's field;" in the second count that the plaintiff "was confident that Patrick Reynolds's wife stole Gribble's corn;" thereby intending to charge her with *larceny*.

The witnesses for plaintiff testified that the defendant had said that Mrs. Reynolds had passed through Gribble's corn-field and had pulled the ears of corn and put them in her lap; two of the witnesses testified that when the defendant made these statements to them they understood him to refer to "roasting ears."

A witness testified that after suit brought and when the case was for trial, the defendant said to her that if she would as witness say that the words had been spoken by Gribble and not by him, he would give her a present.

The defendant asked the court to charge the jury :—

"2. That if they believe, from the evidence, that the defendant spoke the alleged words, and that the persons to whom he spoke them, or who heard them, understood him to refer to standing corn, the plaintiffs cannot recover.

"3. That, if the conversation, in the course of which the alleged words were spoken, showed that the defendant had referred to standing corn, the plaintiffs cannot recover."

The court (Gilmore, P. J.) refused the points. He charged :— * *

"As to the measure of damages there is no certain rule to be laid down for your guidance. Malice is the gist of the action. There is generally a less degree of malice in repeating a slander,

[Stitzell v. Reynolds.]

than in originating one. So, if defendant was told by Mrs. Gribble, before uttering the words, that plaintiff had been guilty of the charge, the damages ought not to be so great as if he had never heard it, but conceived it himself. This would be the general rule, but we can very well imagine exceptions which would not warrant the exercise of the rule. The damages should also be modified on account of the nature of the article alleged to have been stolen. That is, if it was understood that the charge referred to the mere taking of roasting-ears, the damage to the reputation would not be so great as if it referred to the stealing of gathered corn. Taking apples, peaches, or fruit yet attached, and not separated from the soil, although done in a furtive manner, has never been accounted a felony, but is a kind of a larcenous trespass. By the Act of 1863 it is made a misdemeanor, and can be punished as such. Nevertheless, the damages should be such as, while it would vindicate the character of plaintiff, they should not be so large as to injure, materially, the estate of the defendant. They ought to be sufficient to vindicate and compensate the plaintiff for the injury sustained, and [not so low as to leave a slur upon her character.]

[ "But if the evidence of Thomas Gribble is believed, the damages should be vindictive, and such as would be a punishment to the defendant. If that evidence is believed, he concocted an infamous scheme to destroy the character of the plaintiff, and purposed carrying it out by perjury. It is true this was after the suit was brought, and was done, no doubt, as a defence against the action.] But, if defendant felt that he had injured the plaintiff, his true course would have been something in the way of reparation of the wrong, and not an effort to seal the slander through the instrumentality of perjury." * * *

The verdict was for the plaintiff for $318.

The defendant took out a writ of error and assigned for error the refusal of his points and the parts of the charge in brackets.

C. E. Boyle (with whom was A. Howell), for plaintiff in error. —Standing corn is not the subject of larceny: 4 Black. Com. 232; Archbold's Cr. Prac. and Pl. 376, 378; 3 Greenl. Ev. 163. The Acts of March 30th 1860, Pamph. L. 362, May 1st 1861, § 2, Pamph. L. 478, Purd. 687, pl. 1, 3, make taking growing vegetables, &c., a misdemeanor merely and subject to a light punishment. The offence charged must be not only indictable but infamous: Gosling v. Morgan, 8 Casey 275. The plaintiff must show an intent to charge larceny: Barger v. Barger, 6 Harris 492. Whether she so intended was for the jury: Dottarer v. Bushey, 4 Harris 208; Evans v. Tibbins, 2 Grant 451; Colbert v. Caldwell, 3 Id. 191; 1 Starkie on Slander 93, 99–101; Dexter v. Faber, 12 Johns. R. 239; Van Rensalaer v. Dole, 1

Johns. Cas. 279; 2 Saunders's Pl. and Ev. 899; Findlay *v.*
Bear, 8 S. & R. 570; Harvey *v.* Boies, 1 Penna. R. 12; Proper
*v.* Luce, 3 Id. 66.   As to damages: 2 Greenl. Ev. § 418; Eckart
*v.* Wilson, 10 S. & R. 53.

*W. H. Playford,* for defendant in error, cited Eckart *v.* Wilson, Colbert *v.* Caldwell, *supra;* Deford *v.* Miller, 3 Penna. R.
104; Lukehart *v.* Byerly, 3 P. F. Smith 418; Andres *v.* Koppenheafer, 3 S. & R. 257.

The opinion of the court was delivered, February 9th 1871, by
WILLIAMS, J.—This case has been already once before us, and
is reported in 9 P. F. Smith 488.   There the judgment was
entered generally on the first three counts of the declaration;
the first of which, charging a mere trespass, was held to be vicious,
and the judgment was reversed and a *venire de novo* awarded.
On the retrial, the declaration was amended by striking out the
first and fourth counts, and the cause was tried on the second and
third counts, and resulted in a verdict and judgment for the
plaintiffs.   The record is now brought before us for the correction
of alleged errors of the court in refusing to charge as requested
by the defendant, and in the instructions given to the jury for
their guidance in assessing the damages.

The words charged to have been spoken by the defendant, as
laid in the second count of the declaration, are, that " Mrs. Reynolds had stolen corn out of Gribble's field;" and, as laid in the
third count, " that he was confident that Patrick Reynolds's wife
stole Gribble's corn."   The court was requested, in the second
point submitted by the defendant, to instruct the jury that if they
believe from the evidence that the defendant spoke the alleged
words, and that the persons to whom he spoke them understood
him to refer to standing corn, the plaintiff cannot recover; and,
in the third point, that if the conversation, in the course of which
the alleged words were spoken, showed that the defendant had
referred to standing corn, the plaintiffs cannot recover.   The
court refused to charge as requested, and instructed the jury that
the words laid in both counts are actionable; and, if the evidence
is believed, they are substantially proved as laid, which is all that
is necessary to maintain the action.   The first and second assignments of error relate to the refusal of the court to affirm the
defendants' points, and as they raise but one question, may be
considered together.

By the rules of the common law, larceny cannot be committed
of things that adhere to the freehold, as corn, grass, trees, plants,
and the like, for they are parcel of the realty; and the severance
and carrying of them away, if by one and the same continued
act, is a mere trespass.   And hence it was held that calling one

[Stitzell v. Reynolds.]

a thief for stealing a tree, or other thing adhering to the freehold, is not actionable because secretly severing and carrying away such things for the sake of gain is not a felony, but a mere trespass. But now, by the Act of 17th April 1861, Pamph. L. 322, extending the local Act of 30th March 1860 throughout the Commonwealth, the wilful taking and carrying away of fruit, vegetables, plants, &c., whether attached to the soil or not, is declared to be a misdemeanor, and made punishable as such by fine and imprisonment. If under the provisions of this act taking and carrying away standing corn is no longer a mere trespass, but a misdemeanor punishable by indictment and imprisonment, it does not follow that words, charging the larceny of standing corn, are actionable. For, in order to render words spoken of a private person actionable, they must impute not only an indictable offence, but one of an infamous character, or subject to an infamous or disgraceful punishment: Dottarer v. Bushey, 4 Harris 204; Gosling v. Morgan, 8 Casey 273; Stitzell v. Reynolds, 9 P. F. Smith 488. If then the defendant, in speaking the words laid in the declaration, intended to charge the plaintiff with the larceny of standing corn, or "roasting ears" growing on the stalks attached to the soil, and was so understood by the persons in whose presence they were spoken, he was imputing to her an indictable offence; but he was not imputing an offence of an infamous character, or one subject to an infamous or disgraceful punishment; and, therefore, by the well-settled law, the words are not actionable. But if the defendant intended to charge her with stealing corn severed from the ground or stalks on which it grew, though it may not have been husked or garnered, the words are actionable because they impute a felony, the punishment for which the law regards as infamous. As there was evidence tending to show that the words, spoken by the defendant, referred to standing corn or "roasting ears," as understood by the witnesses, the court ought to have affirmed the defendant's points and left it to the jury to determine, whether the words, as proved by the witnesses, amounted to a charge of theft, or a mere misdemeanor, with the instruction that if the defendant, in speaking the words, intended to charge the plaintiff with stealing corn not attached to the soil, the words were actionable; but if he meant to charge her with the larceny of standing corn or "roasting ears," then the words, as they amounted only to a charge of misdemeanor, were not actionable. It is perhaps to be regretted that the law should make any such distinction as to the actionable character of the words. There is but little difference in the turpitude of the offence charged, in whichever sense the words may have been spoken; and there is perhaps as little foundation in reason or morals for the distinction which the law makes. But it exists, and cannot be gainsaid. In the one case the act is theft, in the

[Stitzell *v.* Reynolds.]

other a trespass, or at the most, a mere misdemeanor. And it is settled by an unbroken current of decisions, running through the whole history of the common law, that words spoken of a private person are not actionable unless they impute an indictable offence, of an infamous character, or subject to an infamous or disgraceful punishment. If a count charging a mere trespass is vicious, and will not support a judgment in slander, as we held when this case was here before, surely the proof of words, which amount only to the charge of a trespass, or misdemeanor under the statute, will not sustain the charge in either of the counts in this case or the judgment thereon. As it respects the plaintiff's right to recover, it makes no difference whether the defect appears in the pleadings or evidence—if either shows that only a trespass or misdemeanor is charged, the plaintiff is not entitled to maintain the action.

We come now to consider the alleged errors in the charge on the question of damages. And the first matter complained of is, that the court erred in charging the jury that the damages ought not to be so low as to leave a slur on the plaintiff's character. It is urged that the jury must have regarded the instruction as binding, but taken in the connection in which it was given, we do not see that it was calculated to mislead the jury, or to stimulate them to find a greater amount of damages than they otherwise would, under the impression that the instruction was binding. The court told the jury that while the damages ought to be such as to vindicate the character of the plaintiff, they should not be so large as to injure, materially, the estate of the defendant. They ought to be sufficient to vindicate and compensate the injury sustained, and not so low as to leave a slur on her character. There is nothing in this instruction of which the defendant has any right to complain, and the error is not sustained.

But there is more of substance in the last assignment. The court charged the jury that if the evidence of Thomas Gribble is believed, the damages should be vindictive. And the reason given by the court for this instruction is: "If that evidence is believed, he concocted an infamous scheme to destroy the character of the plaintiff, and purposed carrying it out by perjury. It is true that this was after the suit was brought, and was done, no doubt, as a defence against the action." We think there was error in this instruction. It encouraged and stimulated the jury, if they believed the evidence of Gribble, to find vindictive damages not because of *the malice* with which the words were spoken by the defendant, as shown by his subsequent acts and declarations, but because of the infamous scheme which he had concocted to destroy the plaintiff's character, and which he had endeavored to carry out by attempting to suborn the witness. The jury should have been told that while they might consider the degree

[Stitzell *v.* Reynolds.] ·

of malice with which the words were spoken, in assessing the damages, as shown by the subsequent acts and declarations of the defendant, .they could not give damages for such acts and declarations, however infamous or criminal they might be.

For the reasons given the judgment must be reversed, and the cause sent back for another trial. Whether the plaintiffs are entitled to recover depends upon the sense in which the words were spoken, and this is a question which the jury alone have the power to determine.

Judgment reversed, and a *venire facias de novo* awarded.